IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| MELVIN G. MUNDY | * | Chapter 7 |
|     Debtor | * | |
| | * | Case No.: 1-06-bk-00875MDF |
| KELLY BEAUDIN STAPLETON, | * | |
| UNITED STATES TRUSTEE, | * | |
|     Movant | * | |
| | * | |
| v. | * | |
| | * | |
| MELVIN G. MUNDY, | * | |
|     Respondent | * | |

**OPINION**

**Procedural and Factual History**

Before me is the motion of the United States Trustee ("UST") to dismiss the bankruptcy petition of Melvin Mundy ("Debtor"). The UST's motion invokes § 707(b)(2) of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA"). Under § 707(b), the bankruptcy court must presume that granting relief under chapter 7 will constitute an abuse of the chapter if a debtor's "current monthly income" exceeds allowable expenses in a sufficient amount to enable a debtor to pay a specified amount of debt over a sixty-month period. This mathematical calculation is referred to as the "means test" and is performed by the completion of Official Form 22A, "Statement of Current Monthly Income and Means Test Calculation (Chapter 7)," ("Form B22A").[1]

---

[1] Judge Wedoff succinctly explains the means test as follows: "Chapter 7 relief is presumptively abusive if (a) the debtor's statutorily defined 'current monthly income' ('CMI'), (b) reduced by defined allowances for living expenses and payment of secured and priority debt,

1

Debtor filed a petition under chapter 7 on May 5, 2006. On June 2, 2006, he filed an amended Form B22A that, according to the calculations on the form, indicated that the presumption of abuse did not arise.[2] On line 42 of Form B22A, Debtor included payments for a first and second mortgage to HSBC Mortgage Services in a total amount of $1,118.12. The Statement of Intention filed with Debtor's petition stated that Debtor had surrendered or would be surrendering the residence securing these mortgages.[3] Debtor also reported that his annualized current monthly income was $44,659.92,[4] which exceeded the applicable median family income.

After reviewing Debtor's schedules, statements and other materials, the UST filed the statement required under 11 U.S.C. § 704(b)(1)(A) indicating that Debtor's case should be presumed to be an abuse of chapter 7 under § 707(b)(2)(A)(i). The UST's determination considered several factors, but relied primarily on Debtor's Statement of Intention, which

---

(c) is high enough to at least equal defined trigger points. Eugene R. Wedoff, *Means Testing in § 707(b)*, 79 Am. Bankr. L.J. 231, 231-32 (2005).

[2]Debtor calculated $75.94 in monthly disposable income. No presumption of abuse arose, however, because when this monthly amount was multiplied by 60, as required by § 707(b)(2)(A)(i), the resultant sum of $4,556.40 was less than the $6,000.00 minimum amount required for abuse to be presumed.

[3]The Statement of Intention form does not require a debtor to provide a specific date upon which property will be surrendered. In many cases, the property has been abandoned, and thus effectively surrendered, by a debtor prior to the filing of the chapter 7 petition. The instant record does not show whether Debtor abandoned the residence prior to filing or intended to surrender the property at a later date.

[4]Debtor's Form B22A reported total currently monthly income of $3,721.66. However, the UST's motion averred that Debtor overstated the actual amount of his current monthly income by adding the sum of $341.66 each month, which represented 1/12th of his federal income tax refund for tax year 2005. Therefore, the undisputed annualized current monthly income is actually $40, 550.00, which still exceeds the applicable median family income.

provided for surrender of the residence. Debtor admits that he does intend to surrender the home and, in the future, will not necessarily incur monthly housing expenses in the same amount as the payments to HSBC Mortgage Services. If Debtor is not permitted to include the mortgage payments as expenses on the means test and is required to use the applicable IRS housing standard of $757.00, he will have $361.75 in additional disposable income triggering the presumption of abuse.

A hearing was held in this matter on July 12, 2006. The parties have filed briefs, and the matter is ready for decision.[5]

## Discussion

The parties agree on the material facts and submit this pure legal issue to the Court for decision – may a debtor deduct as an expense on Form B22A, debts he does not intend to pay that are secured by collateral that he does not intend to retain? The UST argues, that for purposes of the means test, Congress did not intend to permit debtors to deduct payments to secured creditors if they do not intend to reaffirm the debt and make the payments. Debtor asserts, to the contrary, that the statutory language authorizes him to deduct mortgage obligations for which he is contractually obligated notwithstanding his decision to surrender the property.

*a.     Relevant Statutory Provisions*

Section 707(b)(2)(A)(i) states that a bankruptcy court shall presume that a chapter 7 case is abusive if "the debtor's current monthly income reduced by the amounts determined under

---

[5]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

3

clauses (ii), (iii) and (iv), and multiplied by 60 is not less than the lesser of – (I) 25 percent of the debtor's non priority unsecured claims in the case, or $6,000, whichever is greater; or (II) $10,000."[6] Section 707(b)(2)(A)(iii)(I) permits a debtor to deduct from current monthly income "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition . . . ." 11 U.S.C. § 707(b)(2)(A)(iii)(I). The resolution of the issue in this case is contingent upon whether, in performing the means test calculation under § 707(b)(2)(A)(i), Debtor is permitted to deduct his mortgage payments as provided in § 707(b)(2)(A)(iii)(I).

  *b.  Principles of Statutory Construction*

  The "starting point" in construing a statute is "the existing statutory text." *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004). "It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Id.* (citations and internal quotations omitted.) "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *In re American Steel Product, Inc.*, 197 F.3d 1354, 1356 (11th Cir. 1999). In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed.2d 290 (1989), the Supreme Court held that the plain meaning of a statute is controlling unless "the literal

---

[6]In contrast to the phrase maze set forth in the statutory text, the parameters of the means test are set forth clearly in the UST's brief. If, after deducting all allowable expenses from a debtor's current monthly income, a debtor has monthly net income of less than $100.00 there is no presumption of abuse. If a debtor has monthly net income of more than $166.67 then the filing will be presumed to be abusive. If a debtor has between $100.01 and $166.66 in monthly net income there is a presumption of abuse if monthly net income multiplied by 60 will pay 25% or more of the debtor's unsecured debt.

4

application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Id.* at 242. A statute is not ambiguous, however, merely because it is susceptible to varying interpretations. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997).

    c.    *Application of statutory construction principles to § 707(b)(2)(A)(iii)(I)*

The Court's first task is to determine the meaning of § 707(b)(2)(A)(iii)(I). The language of the text states that "the total of all amounts *scheduled as contractually due* to secured creditors in each month of the 60 months following the date of the petition" may be deducted as an expense from Debtor's income. The UST argues that the phrase "scheduled as contractually due" means that if a debtor has a mortgage on the date of his petition, he may include his mortgage payments as expenses only if he intends to make those payments in the future. If he intends to surrender the property subject to the mortgage, however, he may not claim the expense. The UST construes the term "scheduled" to mean debts included on Schedule "J," which reports current expenditures.[7] Debtor urges the Court to construe the phrase "scheduled as contractually due" to refer to the payments a debtor is obligated to make under the contract – in this instance, the note and mortgage, regardless of whether or not the property will be retained.

Bankruptcy courts addressing this issue have reached opposite conclusions about the "plain meaning" of § 707(b)(2)(A)(iii). In *In re Nockerts*, 2006 WL 3689465 (Bankr. E.D. Wis.),

---

[7]In addition to reporting current expenditures at the time a petition is filed, a debtor is obligated to report on Schedule "J" any increase or decrease in expenses anticipated to occur within the year after filing. 11 U.S.C. § 521(a)(1)(B)(iv).

the UST moved to dismiss a chapter 7 petition because the debtors had included on Form B22A a payment on a residence that they intended to surrender. Without the burden of this payment, the debtors' monthly income exceeded their expenses by an amount sufficient to fund a chapter 13 plan. The UST in *Nockerts* cited *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006) and *In re Harris*, 2006 WL 2933891 (Bankr. E.D. Okla.) in support its position that unless a debtor intended to make future mortgage payments, they may not be deducted as an expense. In *Skaggs*, the court did not use the common dictionary meaning for the phrase "scheduled as," but interpreted the phrase to mean debts identified on a debtor's bankruptcy schedules. *Skaggs*, 349 B.R. at 598. The court based this construction on a finding that Congress used the phrase "scheduled as" in the Bankruptcy Code "several times." The court then cited § 521 and Fed. R. Bankr. P. 1007(b) for the proposition a debtor's duty to amend their schedules and statement to keep the information current implied that future obligations should be used when calculating expenses for the means test. *Skaggs*, 349 B.R. at 599. Because the Skaggs were no longer making mortgage payments on their residence at the time of the hearing,[8] the court held that the payments could not be included as deductions on Form B22A. Applying similar reasoning, the *Harris* court concluded that "monthly payments for secured debt cannot be included in the means test calculation when a debtor . . . intend[s] to surrender the corresponding collateral." *Harris*, 2006 WL 2933891, *5 (Bankr. E.D. Okla.). The bankruptcy court in *Nockerts* disagreed with the reasoning in *Skaggs* finding that the Missouri court's observation that Congress used "scheduled as" repeatedly in the Code to be inaccurate. The *Nockerts* court determined that this phrase was

---

[8]The Skaggs had ceased making payments on the debt secured by a mobile home and had moved into a rented apartment before filing their bankruptcy petition, but the secured creditor had not yet foreclosed on the home.

used in only one other provision of the Code – § 1111(a).[9] Broadening its search of the Code to isolate the word "scheduled," the court found only two more sections – §§ 523(a)(3) and 554(c) – in which the term referred to information included on bankruptcy schedules. *Id.* 2006 WL 3689465 at *4. The court concluded that

> "scheduled as contractually due" does not refer to the bankruptcy schedules [because] [w]hen describing the bankruptcy schedules, Congress included in the statute a reference to the schedules, either directly by name or indirectly by reference to § 521. On the other hand, when the statute refers to scheduled payments, such as in the reaffirmation or pre-confirmation lease provision, the bankruptcy schedules are not mentioned.

*Id* at 4. I agree with the *Nockerts* court's analysis and conclude that the phrase "scheduled as" does not refer to a debtor's schedules.

*In re Walker,* 2006 WL 1314125 (Bankr. N.D. Ga., May 1, 2006) supports Debtor's position and is factually similar to Debtor's case. In *Walker*, the debtors included in their means test calculations a deduction for future payments on a residence that they intended to surrender. The UST moved to dismiss arguing that this deduction was improper. The court examined § 707(b)(2)(A)(iii) and concluded that payments that are "scheduled as contractually due" are those payments that a debtor must make on certain future dates under the terms of the contract. *Id* at *3. Therefore, the court further concluded that "nothing the debtor does or does not do [in his bankruptcy case] changes the fact that scheduled payments remain contractually due" on the

---

[9] Section 1111(a) provides that "a proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent or unliquidated." 11 U.S.C. § 1111(a).

7

date a debtor files his petition. *Id* at *4 .[10] I agree with the *Walker* court that to determine the plain meaning of the statute, the term "scheduled" cannot be analyzed in a vacuum, separate from the phrase "as contractually due." To interpret the common verb "scheduled" as a reference to the proper noun "Schedule" as used in the Bankruptcy Code is a grammatical exercise too complex and strenuous to be considered "plain." I conclude that the phrase "scheduled as contractually due" is not ambiguous. The phrase refers to the payments due under the contract between the debtor and the secured creditor regardless of the debtor's intent with respect to retention of the collateral or reaffirmation of the debt.

        d.      *Contextual support for inclusion of contractual payments on surrendered collateral*

A contextual analysis of § 707(b)(2)(A)(iii)(I) supports the interpretation of the statute set forth above. Prior to the enactment of BAPCPA, a bankruptcy court could dismiss a case for cause, including bad faith, under § 707(a). *In re Tamecki*, 229 F.3d 205 (3d Cir. 2000). A chapter 7 case with primarily consumer debt also could be dismissed for "substantial abuse" under § 707(b). BAPCPA did not modify a court's authority to dismiss a case under §707(a), but significant changes were made to §707(b). Under the current statutory provision, a case may be dismissed if it is presumed to be an abuse of the chapter under § 707(b)(2) and the presumption is not rebutted. The means test under 707(b)(2) adopts a mechanical approach to identifying abuse

---

[10]A Texas bankruptcy case, *Singletary, infra*, also concluded that the plain meaning of § 707(b)(2)(A)(iii) allows a debtor to include in his Form B22A calculation a payment on property that he intends to surrender. The *Singletary* court, however, concluded that if the property had in fact been surrendered when the motion to dismiss was filed under § 707(b)(2)(A)(iii), the debtor could not include the payment.

by providing precise, specific formulae for computing a debtor's income[11] and expenses. When calculating his deductions in Part V of Form B22A, a debtor does not enter his actual expenses for most entries. Instead, he enters amounts that are prescribed by national or local standards issued by the Internal Revenue Service ("IRS"). The IRS standards are applied to determine food, clothing, household supplies, transportation, utilities and non-mortgage housing expenses. Actual expense figures may be used only for "other necessary expenses" permitted under the IRS standards. Therefore, within the context of this mechanical formula in which deductible expense amounts may not reflect a debtor's actual expenditures, it is not inconsistent to include secured debt for property that a debtor intends to surrender, particularly when he will have to incur new debt to replace the collateral or, as in this case, provide for alternate housing arrangements.

The UST has argued that this interpretation conflicts with the purpose of BAPCPA "to identify those debtors who can afford to repay their debts and to ensure that they do so." I do not disagree that this is one of the overarching purposes of the legislation. *In re Hardacre*, 338 B.R. 718. 720 (Bankr. N.D. Tex. 2006) ("[BAPCPA] was intended to address what Congress perceived to be certain abuses of the bankruptcy process."); *In re Singletary*, 2006 WL 2987945, *1 (Bankr. S.D. Tex.) ("One goal of the BAPCPA amendments was to regulate abuse in consumer bankruptcies."). Further, Congress clearly made changes to § 707(b) "to steer debtors away from Chapter 7 and into Chapter 13." *Id.* at *1. However, in regard to the means test, Congress had a more precise intention – to create a mechanical formula to identify presumed abuse. *In re Randle*, 2006 WL 3734351, *3 (Bankr. N.D. Ill.) (citing Report of the Committee on

---

[11]The means test employs a mechanical test for income as well as expenses. "Current monthly income" is a defined term under § 101(10A) and is not "current" income, but rather the debtor's average earnings in a specified six-month period.

9

the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 1009-31, Pt. 1, P. 553, 109th cong., 1st Sess. (2005)). "Congress' intent to use a standardized or mechanical test and avoid reliance on individualized information as much as possible is demonstrated throughout §707(b)(2)." *Id.* Under accepted rules of statutory construction, the specific language of § 707(b)(2)(A)(iii)(I ) prevails over the generally understood intent of Congress in enacting BAPCPA and even over the intent of § 707(b). *Id.* (citations omitted).[12]

The Court's interpretation that § 707(b)(2)(A)(iii)(I) permits debtors to deduct their secured debt payments from CMI is bolstered by the codification of the totality of the circumstances test in § 707(b)(3).[13] Section 707(b)(3) requires a court, when considering whether the granting of relief would constitute abuse, to consider whether the petition was filed in bad faith or whether abuse is demonstrated under the totality of the circumstances. Accordingly, the totality of the circumstances test, which before BAPCPA had been adopted by many bankruptcy courts (including this one) to determine substantial abuse, now is the prescribed statutory method to identify whether abuse exists when it cannot be presumed. *See In re Miller*, 306 B.R. 782 (Bankr. M.D. Pa. 2004). Under the totality of the circumstances test, courts may consider both current and future income and expenses, including a debtor's ability to repay his debts under

---

[12]The UST's observation that payments on secured debts are the "notable exception" to the general requirement that other allowable expenses under § 707(b)(2)(A)(ii) must be reasonable and necessary does not advance her position. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23, 104 S.Ct. 296, 300 (1983) *quoting United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972). The omission of the terms "necessary" and "reasonable" in reference to average monthly payments on secured debts suggests that these terms are inapplicable to § 707(b)(2)(A)(iii)(I).

[13]The UST did not move to dismiss the within case under § 707(b)(3).

chapter 13. *See In re Richie*, 353 B. R. 569, 575 (Bankr. E.D. Wis. 2006); *In re Pennington,* 348 B.R. 647, 651 (Bankr. D. Del. 2006); *In re Pak*, 343 B.R. 239, 243 (Bankr. N.D. Cal. 2006). "To allow a movant to include the outcome of future events as part of the means test would eliminate the distinction between the presumption of abuse test and the totality of the circumstances test." *In re Hardwick*, 2007 WL 518617, *4 (Bankr. D.N.H. 2007). Therefore, a debtor's decision to surrender collateral securing a debt, while it may be a factor when analyzing abuse under the totality of the circumstances test under § 707(b)(3), may not be considered under the plain language of § 707(b)(2)(A)(iii)(I).

  e. *The role of the UST*

  The UST asserts that Debtors' interpretation of § 707(b)(2)(A)(iii)(I) would render "meaningless" her duties under § 704(b)(1). While this construction of the provision may make perfunctory the responsibility of reviewing all material filed by a debtor, the task is not meaningless. The UST must insure that debtors, while self-reporting on whether their cases are presumptively abusive, prepare Form B22A completely, correctly and truthfully. I am unable to comprehend how this broad responsibility is undermined by the statutory construction of § 707(b)(2)(A)(iii)(I).

11

## CONCLUSION

For all of the reasons discussed above, the motion of the UST will be denied. An appropriate order will be entered.

By the Court,

/s/ Mary D. France
Bankruptcy Judge

*This document is electronically signed and filed on the same date.*

Date: March 1, 2007